Filed 7/18/24  P. v. Gonzalez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063285 |
| v. | (Super. Ct. No. FWV21002320) |
| ALFREDO DELACRUZ GONZALEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment and postjudgment order of the Superior Court of San Bernadino County, Mary E. Fuller, Judge.  (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed and remanded with directions.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

\*     \*     \*

Alfredo De La Cruz Gonzalez killed his sister by stabbing her in the chest.  A jury convicted him of first degree murder.  On appeal, he contends there was insufficient evidence of premeditation and deliberation to support his conviction, and also that the evidence was insufficient to warrant instructing the jury on a lying-in-wait theory of murder.  We disagree.  After months of conflict with his sister, Gonzalez waited for her in a dark parking lot with a large knife in his hand, knowing she was about to leave for work; he then stabbed her in the heart and fled.  This substantial evidence supported the jury's verdict related to premeditation and deliberation, and the trial court's decision to instruct on lying in wait.  We therefore affirm the judgment.

Gonzalez also asserts the abstract of judgment should be amended to reflect the trial court's oral pronouncement of restitution fines of $300.  The Attorney General concedes as much.  We therefore remand the matter to allow the court to prepare an amended abstract of judgment and related sentencing minute order as outlined below.

## FACTS

1.    *The Incident*

Gonzalez's older sister Benita and her partner Victor lived in a two-bedroom apartment in Ontario with their four children and Victor's adult brother.  Gonzalez moved in with them in March 2021.  Gonzalez and Victor's

2

brother slept in the apartment's living room, the four children shared one of the bedrooms, and Benita and Victor shared the other. Despite living together, the children had no relationship with Gonzalez.

Gonzalez was initially happy when he moved in with his sister's family; he had a job doing yard work. He was later fired, however, and thereafter spent his days drinking beer and tequila in the apartment. The family suspected he was also using drugs.

Gonzalez and Benita argued on occasion. She told him he needed to get a job and accused him of wasting his money on alcohol. He told her she could not tell him what to do. During one such argument, Gonzalez (who had been drinking) started throwing things.

Benita kicked Gonzalez out of the apartment in April. Victor later allowed Gonzalez to return temporarily, and after that, Gonzalez sometimes stayed at the apartment and other times lived on the street. When Gonzalez was at the apartment, he continued to drink, and he and Benita did not speak to one another.

On June 17, 2021, Gonzalez arrived at the apartment at about 6:00 p.m. Around that same time, Benita and her daughter were in the adjoining room discussing the fact that Benita's employer had asked her to come to work 15 minutes early that evening for her shift, which normally started at 10:00 p.m. Gonzalez left the apartment; he later told police he went to a liquor store and then to a park.

At about 9:20 p.m., after getting ready for work, Benita left the apartment. As she was walking through the apartment parking lot toward her car, Gonzalez stabbed her in the chest with a knife.

When Victor looked out the apartment window to make sure Benita had made it to her car safely, he saw Benita laying on the ground. He

3

ran downstairs, hugged her, and carried her to a grassy area. Benita's daughter heard Victor yelling, ran downstairs, saw her mother covered in blood, and called 911. She held her mother's hand and told her not to give up. Benita died later that evening.

A neighbor was in the parking lot when Gonzalez attacked Benita. She recounted that some children were playing tag as the sun went down, but it was otherwise very quiet in the parking lot. As the neighbor was cleaning out her mother's car, she noticed a woman walking through the parking lot. Suddenly the woman moved her shoulders in a back and forward motion, grabbed her chest, and fell to the ground. The neighbor did not see anyone near the woman or hear any argument.

The medical examiner who conducted Benita's autopsy determined the fatal knife wound extended through her chest from the front to the back of her body. The knife punctured her skin, heart, and sternum, which, according to the medical examiner, is the hardest body part to penetrate and would take "some force" to penetrate.

2. *Gonzalez's Confession*

Ontario police located Gonzalez several days later. In his backpack, he had a large kitchen knife with a six inch blade. Gonzalez waived his *Miranda*[1] rights and was interviewed by police.

During that interview, Gonzalez told investigators that when he moved in with Benita and her family, he initially had a gardening job and was paying Benita $500 per month in rent. After he lost that job, however, he and Victor's brother started drinking a lot at the apartment, which caused problems with Benita. Gonzalez also resumed his use of crystal

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

methamphetamine. Benita's four children warned Gonzalez that the police were going to "get" him because of his drug use.

Gonzalez told investigators that on the day of Benita's murder, he left the apartment in the morning and spent the day drinking at the park. Over the course of the day, he heard rumors that the police were going to arrest him and also that the children had taken and shared pictures of him.

Gonzalez recounted that when he returned to the apartment building that evening, he yelled at Benita about the children disrespecting him and told her about the rumors he had heard. Benita told him he was crazy. Gonzalez left and went to the liquor store and then to the park, where he continued drinking with a friend.

Gonzalez told investigators that later that evening, he returned to the apartment building and waited for Benita. As he waited, he held a knife in his hand; he was "ready" to act "[b]ecause of the information she was giving out" about him. After about two minutes in the parking lot, he saw Benita. He started arguing with her again. He then stabbed her in the chest and fled the scene.[2]

Gonzalez explained no one told him to attack his sister; he did it because of the rumors he heard that his sister was giving out information about him, and because he was being called "little pig." He also said, "I was drugged." When asked if he understood that he deprived four children of their mother, he responded, "I punished my nieces and nephews."

---

[2] Gonzalez admitted he knew Benita normally left for work at 9:30 p.m. but claimed he must have stabbed her around 8:00 p.m. because it was still light out.

5

3.  *Trial*

Gonzalez was charged with murder and with personally using a deadly and dangerous weapon (a knife) in the commission of the offense. (Pen. Code,[3] §§ 187, subd. (a), 12022, subd. (b)(1).) A transcript of Gonzalez's police interview was admitted into evidence at trial.

The trial court instructed the jury with CALCRIM No. 521, explaining that Gonzalez was being prosecuted for first degree murder under two theories: (1) that the murder was willful, deliberate, and premeditated, and (2) that the murder was committed by lying in wait.

The jury convicted Gonzalez of first degree murder and found he personally used a deadly and dangerous weapon (a knife) in the commission of the offense. The jury did not specify the theory of murder on which the conviction was based.

The trial court sentenced Gonzalez to 25 years to life in state prison, plus an additional year for the weapon enhancement, and ordered him to pay various fees and fines. Gonzalez filed a notice of appeal.

## DISCUSSION

1.  *Evidence of Premeditation and Deliberation*

Gonzalez argues the evidence was insufficient to support the jury's finding that the murder was willful, deliberate, and premeditated. He contends the stabbing took place when he was intoxicated and in a fit of rage, and no reasonable juror could have determined the killing was premediated and deliberate. We are not persuaded.

---

[3]     All further statutory references are to this code.

6

When considering a challenge to the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.) We do not reweigh the evidence or reassess witness credibility, and we presume in support of the judgment every fact reasonably inferable from the evidence. (*Ibid*.) We cannot reverse the judgment because the evidence might support a contrary finding. (*Ibid*.)

Murder that is committed by "willful, deliberate, and premediated killing" is first degree murder. (§ 189, subd. (a).) "Deliberate" means the defendant carefully thought about and weighed considerations for and against the proposed course of action, and "premeditated" means the defendant thought about or considered the act in advance. (*People v. Houston* (2012) 54 Cal.4th 1186, 1216; *People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) Deliberation and premeditation do not require any extended period of time; the relevant test is rather the extent of the reflection. (*Koontz, supra,* at p. 1080.) "'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.'" (*People v. Pearson* (2013) 56 Cal.4th 393, 443.)

Three categories of evidence are normally considered in determining whether evidence supports a finding of deliberation and premeditation: (1) motive, (2) planning, and (3) manner of killing. (*People v. Jennings* (2010) 50 Cal.4th 616, 645.) Evidence in each category does not have to be present in any particular combination to constitute substantial evidence of deliberation and premeditation. (*Ibid*.) Circumstantial evidence

7

can supply an adequate foundation for inferring premeditation and deliberation. (*People v. Proctor* (1992) 4 Cal.4th 499, 530.)

Applying those standards here, we conclude there is substantial evidence that Gonzalez killed Benita with premeditation and deliberation. He had a demonstrable motive to kill Benita because he wanted revenge on her and her children for the way he felt they were treating him. His admission that he waited for several minutes for Benita while holding a knife in his hand establishes planning. And the single blow to her heart, which was strong enough to puncture her sternum, evidences an intent to kill her.

Gonzalez claims he was under the influence of alcohol and methamphetamine at the time of the murder, he was paranoid and in a state of psychosis, and he therefore could not have formed the requisite intent. However, the jury was instructed on voluntary intoxication and its relevance to whether he acted with deliberation and premeditation (CALCRIM No. 625), and it found Gonzalez guilty of first degree murder. We find no grounds for reversing that verdict.

2.    *The Lying-in-Wait Instruction*

Gonzalez next challenges the trial court's decision to instruct the jury on the lying-in-wait theory of murder. He contends there was no substantial evidence he had been lying in wait; the evidence instead showed he argued with his sister while highly intoxicated and became enraged during their argument. Again we disagree.

"A trial court must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof. [Citation.] We review the trial court's decision de novo." (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.)

8

Lying-in-wait murder occurs when there is "'"(1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act [so as to show a state of mind equivalent to premeditation or deliberation (as opposed to acting out of rash impulse)], and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage."'" (*People v. Cage* (2015) 62 Cal.4th 256, 278; *People v. Russell* (2010) 50 Cal.4th 1228, 1244.)

In this case, there is substantial evidence to support each of those elements. Gonzalez told investigators that he knew what time his sister would leave for work, that he waited several minutes for her in the parking lot with a six-inch-bladed knife "ready" in his hand, and that he approached her as soon as he saw her. And according to the lone eyewitness, Benita was walking through the quiet parking lot with her arms full when she was stabbed. She did not scream or make any noise before being stabbed, which suggests she was an unsuspecting victim. Substantial evidence supported giving the instruction on lying in wait.

In any event, the jury found Gonzalez guilty of first degree murder without specifying its theory of guilt, and the record does not indicate the jurors favored one theory of murder over another. Since substantial evidence supports the alternative theory of murder (premeditation and deliberation), the murder conviction must be affirmed.

3. *Clerical Errors*

Gonzalez's final argument concerns a clerical error on the amended abstract of judgment and related sentencing minute order.

At sentencing, the trial court ordered Gonzalez to pay a restitution fund fine of $300 (§ 1202.4, subd. (b)). It also ordered and stayed a $300 parole revocation restitution fine (§ 1202.45). The original abstract of

9

judgment, however, did not list any section 1202.4 fine and listed $300 for the section 1202.45 fine.  After the California Department of Corrections sent a letter flagging the error, the court issued a minute order and amended abstract of judgment listing both fines as "$330" (instead of $300 each as originally ordered).

Gonzalez contends the errors on the amended abstract of judgment and related sentencing minute order should be corrected.  The Attorney General concedes the issue, and we accept that concession.  Since the first amended abstract and minute order are inconsistent with the trial court's oral pronouncement, they require correction.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)  On remand, the abstract of judgment should be amended to reflect the $300 amount for both fines, consistent with the court's pronouncement at sentencing.

## DISPOSITION

The judgment is affirmed.  The case is remanded to the trial court to prepare a corrected sentencing minute order and to prepare an amended abstract of judgment.  The court shall then forward a certified copy

of the second amended abstract of judgment to the Department of Corrections and Rehabilitation.


GOETHALS, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.

11